**L. N. HAGOOD and Mary C. Hagood, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3907.**

United States District Court
D. Wyoming.

Jan. 9, 1956.

L. N. Hagood, Casper, Wyo., and Vincent Mulvaney, Cheyenne, Wyo., for plaintiffs.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for defendant.

T. BLAKE KENNEDY, District Judge.

This cause came on for trial the 9th day of January, 1956, on the pleadings and stipulation of facts heretofore filed by the parties, no further evidence having been introduced by either party, the Court having examined the pleadings, stipulation and attached exhibits, and the cause having been submitted to the Court for its determination and decision, and it appearing to the Court that there is no substantial question of fact involved but chiefly one of law, and the Court being fully advised in the premises does now make, adopt and find the following:

Findings of Fact.

1. This action was filed in this court July 8, 1955, and brought under Section 1346, Title 28 of the U.S.Code as amended by Public Law 559, 83rd Congress, of July 30, 1954, and Sections 3771 and 3772 of the Internal Revenue Code of 1939 (now Secs. 6611, 7422 of the 1954 Code, 26 U.S.C. §§ 6611, 7422) for the recovery of federal income taxes erroneously and illegally collected.

2. The plaintiffs, L. N. Hagood and Mary C. Hagood, are husband and wife and during the calendar year 1948 and at all times material to the issues herein were citizens and residents of the City of Casper, State of Wyoming. That for the calendar year 1948 they reported and returned their income and kept their books and accounts on the cash receipts and disbursement basis and method and filed their joint federal income tax return for said calendar year in the office of the District Director of Internal Revenue at Cheyenne, Wyoming, and paid the taxes due thereon.

3. The Commissioner of Internal Revenue by Frank G. Clark, Director of Internal Revenue at Cheyenne, Wyoming, upon audit of said return made certain adjustments in the computation of plaintiffs' said taxable income according to a 90-day letter and examining agent's report dated August 30, 1954, and by giving effect to such adjustment determined deficiencies for the taxable year as follows:

$9,105.54 and interest $3,114.09. Pursuant to such determination and 90-day letter, additional income taxes for said calendar year 1948 were paid by plaintiffs and received by the defendant on or about December 7, 1954, as follows:

Deficiency .............$ 9,105.54
Interest ...............  3,114.09

Total additional paid by
    plaintiffs ...........$12,219.63

4. The Commissioner of Internal Revenue in making the aforesaid adjustments and requiring the aforesaid additional taxes for the calendar year 1948 disallowed as tax deductions all filing fees and first year government lease rentals on noncompetitive lease applications filed by plaintiffs and required them to be capitalized. The aggregate amount including numerous items set forth in Exhibit A of the Examining Officer's report according to said 90-day letter were as follows:

Filing Fees ............$   716.00
First year government
    lease rents ..........$20,908.00

Total deductions
    disallowed ..........$21,624.00

All of said payments, particularly the rental payments, were unconditional and unrestricted payments made to the Treasurer of the United States and were then and there required to be made to maintain said lease filings or applications, and said first year rentals also applied as rental for the first lease year to maintain such leases as were granted on said filings when lease was issued.

All except a few of said lease applications were granted within 1948 or subsequently, under the Act of February 25, 1920, 41 Stat. 437, as amended, 30 U.S. C.A. § 181 et seq., and applicable departmental regulations in the form of contract agreed to by the parties and in evidence herein attached to said stipulated facts.

The foregoing adjustments, capitalizations and disallowances account for the basis of increase in the additional tax required and paid by plaintiffs as aforesaid.

5. A proper claim for refund of income taxes and interest paid as aforesaid was filed by plaintiffs in the office of the District Director of Internal Revenue at Cheyenne, Wyoming, on January 6, 1955. Over six months elapsed between the filing of said claim for refund and the date on which this action was commenced. No part of said claim for refund for said calendar year 1948 has been paid or credited to plaintiffs.

6. That at all times material to the issues herein plaintiffs leased noncompetitive oil and gas leases from the United States of America for the exploration and development of oil and gas under Section 17 of the Mineral Leasing Act of February 25, 1920, 41 Stat. 437, as amended, 30 U.S.C.A. §§ 181 et seq. 226, on public lands of the United States.

That such leases filed for by plaintiffs were commonly known in the oil industry as "wildcat" leases not within the known geologic structure of any producing oil or gas field. After the selection of such lands as were considered to have some favorable geological prospects and filing lease applications therefor, plaintiffs' customary practice and method of developing such leases was to contract with responsible oil operators, drillers or oil companies and enter in subleases, operating agreements or leasing arrangements wherein plaintiffs always reserved an overriding royalty in any oil or gas produced. Such was the extremely hazardous and speculative nature of so-called "wildcat" leasing and drilling that a large percent of such leases were never dealt in any manner and no exploration on or near them was obtainable and the government rental expense thereof paid to defendant was total expense and loss to plaintiffs. If the leases were cancelled or terminated without production, plaintiffs were required to restore to income any depletions taken by them upon any cash bonuses received in any such leasing arrangements.

7. That for many years prior to 1948 plaintiffs had consistently deducted said lease rental payments, and such deductions had been allowed by the Commissioner of the Bureau of Internal Revenue, and that it was not until the service of a 30-day letter of July 14, 1950, that said Commissioner required such changes in plaintiffs' long-established basis and method.

8. That the compulsory capitalization of first-year rentals as to all applicants and lessees of such leases was not uniformly and indiscriminately applied by the Commissioner of the Bureau of Internal Revenue, the Commissioner approving the general practice of not requiring such capitalization under so-called "ticket" leasing where "ticket" brokers and alleged "agents" and their nominees filed on such leases in their own names and sold or subleased to their so-called principals, in some cases the "ticket" broker retaining a small royalty.

9. That the plaintiffs are the sole owners of their claim and there has been no assignment or transfer of said claim or any part thereof or any interest therein, and no person other than plaintiffs has been or is the owner of or interested in said claim or any part thereof.

10. That plaintiffs long prior to 1948 have elected to expense all intangible drilling costs, all non-productive well costs, all carrying charges as paid including all lease rentals, and the same method was consistently followed for the taxable year 1948.

11. That, according to plaintiffs' method, when leases were cancelled which they had subleased for a cash bonus and overriding royalty, it was their practice to restore to income the whole amount of the 27½ depletion taken on such cash bonuses.

12. That the aforesaid rental payments were ordinary and necessary expenses paid and incurred by the plaintiffs during said year 1948 in carrying on the trade or business incident to said oil and gas leases and were rentals or other payments required to be made as a condition to the continued use or possession, for purposes of said trade or business, of the property covered by the said leases; that the plaintiffs have not taken and are not taking title to the property covered by said lease, and have never had and do not now have any equity therein.

13. That the rental payments paid as aforesaid constituted an ordinary and necessary expense paid and incurred by the plaintiffs during the said calendar year 1948 for the production or collection of income and for the management, conservation or maintenance of said

leasehold interests, and which leasehold interests are and were held by the plaintiffs for the production of income.

14. Notwithstanding plaintiffs' said claim for refund thereof, no part of said amount which was so assessed and collected has been repaid or credited and there are no offsets or credits against the same.

From the foregoing findings of fact the Court makes and adopts the following:

### Conclusions of Law

1. The payments by plaintiffs to the Treasurer of the United States listed in report of the Examining Officer, W. E. Sederholm, incorporated in said 90-day letter, which were capitalized and deduction thereof disallowed, constituted filing fees and first year rentals required to be paid pursuant to the Act of February 25, 1920, 41 Stat. 437, as amended, and were deductible fees and rentals within the meaning and purview of Internal Revenue Code, Section 23(a) (1) (A), 26 U.S.C.A. § 23(a) (1) (A), and constituted ordinary and necessary expenses paid or incurred by the plaintiffs during said calendar year 1948 for the production or collection of income, or for the management, conservation or maintenance of said leasehold interests, and which leasehold interests were. and are held by the plaintiffs for the production of income within the meaning and purview of Internal Revenue Code, Section 23(a) (2), and under each of said sections the plaintiffs were entitled to have the same deducted from gross income for federal income tax purposes, said sections being re-enacted in the Internal Revenue Code of 1954, Sections 161 and 162, and Section 212, 26 U.S.C.A. §§ 161, 162, 212.

2. That such filing fee and first year rent payments were unrestricted and unconditional; that any repayments or so-called "land office refunds" were the allowance of statutory claims or public lands laws provisions for repayment of excess payment on public land entries cancelled or rejected for various purposes, 41 Stat.L. 366, 43 U.S.C.A. § 95 et seq., .46 Stat. 822, 43 U.S.C.A. § 98a and 43 C.F.R. 217, that such repayments might be allowed or disallowed in whole or in part in the year paid or later years and were subject to a two-year statute of limitations. Such repayments were not mere demand deposits and were income to plaintiff if and when such repayments were received and were so reported as income by plaintiffs.

3. That some of the 1948 payments of first half of the first year government lease rents were paid with the filing of the application in the land office, and some were paid in said year when called for by land office notice or decision on lease applications filed in prior years and were total first year rents or balance of first half year rents; that such non-competitive leases were free grants to the first applicant and that none of said first year lease rent payments were paid for the acquisition of or upon or for the execution of such noncompetitive leases and did not apply as rental until after the lease was issued and granted, at which time they applied as rent for the first lease year, the second and third years being excused by federal law; that such payments prior to the issuance of said leases were required by federal law to maintain and carry the public land filings or lease applications until leases were issued and were ordinary and necessary expenses paid or incurred by plaintiffs during said calendar year 1948, which they elected to expense according to their practice of prior years, consistently approved by the Commissioner of Internal Revenue prior to the calendar year 1948.

4. That statutory 27½ percentage depletion deductions on cash bonus, received by plaintiff for subleases of such leases with the reservation of overriding royalties, should be restored to income when such leases are cancelled unproductive; that government rent payments for such leases either to maintain the filing until issued or the leases thereafter are deductible expense when paid or incurred and are not offset by or recoverable through depletion.

5. The adjustments made by the said Commissioner in recomputing plaintiffs' income tax liability for the calendar year 1948 were erroneous and illegal, and the additional taxes based thereon in the sum of $9,105.54 and interest of $3,114.09 were illegally assessed and collected by the defendant, and by reason of the premises plaintiffs have overpaid income taxes for said calendar year 1948 in the sum of $9,105.54 and interest of $3,114.09, in all amounting to the sum of $12,219.63, which is now due and owing from defendant to plaintiffs with 6% interest from December 7, 1954, until paid by defendant.

6. That plaintiff is entitled to have judgment against the defendant for the sum of $12,219.63 with interest thereon at the rate of six percent (6%) per annum from the 7th day of December, 1954, until paid by defendant, and for their costs and disbursements of this action.

Judgment is hereby ordered to be entered accordingly.

To these findings of fact and conclusions of law defendant is allowed an exception.